UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                        :
THOMAS MASCITELLI,                      :        Case No. _____
        PLAINTIFF                       :
                                        :
                                        :
V.                                      :
                                        :
WEBSTER BANK, N.A.                      :
        DEFENDANT                       :        SEPTEMBER 8, 2023

## COMPLAINT

**I.      Introduction**

1.       Under Federal law, employers must not discriminate against employees on the basis of age such that, but for the age of the employee, the employer would not have taken the discriminatory adverse action.  Age Discrimination in Employment Act ("ADEA"), 29 U.S.C § 623*, et al.*; *Gross v. FBL Fin. Servs.,* 557 U.S. 167, 174 (2009). Further, employers must not discriminate against employees by making disability "a motivating factor" for taking adverse action against them, even if other factors may have also motivated the defendant's decision. Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.; Parker v. Columbia Pictures indus.,* 204 F.3d 326, 337 (2d Cir. 2000).

2.       Under Connecticut law, employers must not discriminate against employees by making age or disability "a motivating factor" for discharging or failing to hire them, even if other factors may have also motivated the defendant's decision. Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60*, et al.*; *Levy v. Comm'n on Human Rights & Opportunities,* 236 Conn. 96, 110 (1996).

3.      Here, Defendant Webster Bank, N.A. failed to reinstate and / or rehire Plaintiff Thomas Mascitelli, then 68 years old and then recently cleared to return to his position following his treatment for cancer. Defendant advertised for positions for which Plaintiff previously held and / or clearly qualified, but Defendant determined not to reinstate or rehire Plaintiff without explanation. Plaintiff would have been reinstated or rehired but for his age, and Defendant was motivated in part by his age and / or disability in failing to reinstate or rehiring him. Plaintiff suffered lost wages and benefits of employment as a result of Defendant's adverse employment actions.

**II.    Parties**

4.      Defendant is Webster Bank, N.A. ("Defendant" or "Webster"), a Connecticut bank with its main headquarters at 145 Bank Street, Waterbury, Connecticut 06702. Webster Financial Corporation is the holding corporation for Webster Bank, N.A.

5.      Defendant describes itself as "a leading mid-size bank with more than $33 billion in assets," according to its website.  It claims, "our bankers serve more than 3 million customers through Retail and Commercial Banking, and our HAS Bank division, one of the nation's largest providers of Health Savings Accounts (HSAs.)"

6.      Defendant is an employer as that term is defined by 29 U.S.C.A § 630 (b); 42 U.S.C.A § 12111(5)(A), and C.G.S. §46a-51(10).

7.      Plaintiff Thomas Mascitelli ("Plaintiff") is a resident of Trumbull, Connecticut. Plaintiff's date of birth is in December of 1952.

### III.    Jurisdiction and Venue

8.      This Court has federal question jurisdiction over Plaintiff's federal claims under the ADEA and ADA pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

9.      Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391.

10.     Plaintiff received a release of jurisdiction from the Commission of Human Rights and Opportunities dated August 17, 2023.

11.     Plaintiff received a Right to Sue letter from the Equal Employment Opportunity Commission dated August 18, 2023.

### IV.    Facts

12.     On March 12, 2012, Defendant hired Plaintiff in the position of Underwriter, Consumer Finance.  At that time, Defendant assigned Plaintiff to report to Sarah Collins in Defendant's Cheshire location.

13.     On January 8, 2015, Plaintiff transferred from this position to Senior Loss Mitigation Specialist.  In this position, Defendant assigned Plaintiff to report to Gary Clarke, VP Manager Workout. At that time, Plaintiff also received a raise. Plaintiff held this position until August 31, 2016.

14.     On September 1, 2016, Plaintiff was promoted, this time to the position of Mortgage Originator, and Plaintiff was assigned to report to Filomena Minelli (age - early 50's).  Plaintiff held that position until July 24, 2019, when Plaintiff's medical leave started.

15.     On February 14, 2019, Defendant provided Plaintiff with Plaintiff's 2018 performance review.  Minelli rated Plaintiff as having "solid performance," stating "MBO has established a solid foundation and RSM has great hopes that 2019 will be the year

3

where all comes together and goals are achieved and exceeded. Good job Tom! Keep up the good work!"

16.     On July 25, 2019, Plaintiff began a leave of absence for colon cancer.  At the time of Plaintiff's leave, Plaintiff believed that he was the oldest MBO at Plaintiff's location.

17.     On August 1, 2019, Plaintiff was on short term disability through both CIGNA and Webster, per Webster's policies.

18.     Despite that Plaintiff was on leave, Minelli reviewed Plaintiff's performance for the 2019 year.  Minelli rated Plaintiff as having "solid performance" overall and wrote, "while MBO has been out on leave since July 2019, he was on track to achieve his production goals. MBO demonstrated an outstanding commitment and dedication to his role, partners and customers."  Defendant did evaluate Plaintiff's production goals and rated Plaintiff's performance as "inconsistent" and has having made "0" progress due to the fact that Plaintiff was out on Plaintiff's leave.

19.     On February 1, 2020, Plaintiff transitioned to Long Term Disability – which was approved for a twelve month period through both CIGNA and Webster, per Webster's policies. Webster's policy states in relevant part, "Upon return from an approved leave, Webster will make every effort to place you in your former position or one that is equivalent subject to circumstances that may effect [sic] Webster's operations."

20.     All of Plaintiff's leaves were "approved leave" pursuant to Webster's handbook.

21.     On April 1, 2020, Defendant notified Plaintiff that he was being transitioned from active employee to inactive status. As of April 1, 2020, Plaintiff's medical coverage

changed from active to retiree status.  At the time of this transition, Plaintiff discussed with his manager Mina Minelli about his returning to work.

22.     Defendant and Plaintiff agreed to touch base with each other about Plaintiff's return after Labor Day.

23.     Plaintiff spoke with Minelli in mid to late September 2020, and she told Plaintiff to contact her after Plaintiff received his bloodwork and scans at the end of October 2020.

24.     In October 2020, Plaintiff was medically cleared to return to work.

25.     After being medically cleared to return to work, Plaintiff reached out again to Minelli and requested his old position.

26.     At that time, Minelli told Plaintiff that his position had been eliminated, but that if Plaintiff wanted to return to Webster, that Plaintiff should apply to open positions (such as MBO) through HR.

27.     Plaintiff was confused by Minelli's comments because Plaintiff had made clear to her since April 2020 that Plaintiff wanted to return to his former position.  In addition, Plaintiff's former team members were all MBOs, and they were all still there.

28.     On November 27, 2020, Plaintiff made a written request to return to work.

29.     On November 27, 2020, Plaintiff also submitted Plaintiff's application for the position of Mortgage Banking Officer - Req. 19-1486.

30.     At the time that Plaintiff submitted this application, Plaintiff was 67 years old and a cancer survivor.

31.     On November 30, 2020, Gentiana Dauti, Defendant's Human Resources Operations Coordinator emailed Plaintiff, stating "Hi Thomas, My best advice would be to

review the two MBO positions we have available by visiting our career page. I've included the link below. The recruiter for the positions is Cynthia LeGault. Please feel free to reach out to her as well."

32.     On November 30, 2020, Plaintiff responded to Dauti's email that same day and emailed both LeGault and manager Mina Minelli as to the procedure to return to Plaintiff's former position.

33.     LeGault responded that same day, copying Minelli on the email, and writing "Hi Tom. I hope that you had a wonderful Thanksgiving. Hiring is on a bit of a hold at the moment. We are hoping this changes soon but when it does I will be sure to reach out to you. Have a happy holiday season."

34.     Plaintiff was confused by LeGault's response that "hiring was on a bit of a hold" since Dauti had referenced the two MBO positions that were available on the career page.

35.     On or about November 30, 2020, Plaintiff also left a voicemail with Melissa Evans about returning from his leave, but Plaintiff did not get a response.

36.     On December 11, 2020, Plaintiff applied for the position of REO-Coordinator -20-1438.  Plaintiff had worked in the Recovery and Restructure Department from March 12, 2012 to August 22, 2016.  Plaintiff was very familiar with this type of work and qualified for this position.

37.     On December 15, 2020, Plaintiff emailed Defendant's Vice President of Retail Lending J. Roberts requesting reinstatement as follows:

> I have been with Webster Bank since March 12, 2012, first as a Loss Mitigation specialist until August 2016, and then as an MBO until July 24, 2019.  On July 25, 2019 I started a medical leave due to colon cancer, and after 2 surgeries, 6 months of chemo treatment, my scans and blood work

are good, and I want to return to my former position as an MBO. I recently spoke with my manager Mina Minelli and recruiter Cynthia LeGault, and they mentioned there was a hiring freeze at this time. I would be very grateful if an exception could be reviewed and granted and allow me to return to Webster Bank.   Thank you in advance for your time and consideration.

38.     Roberts did not respond to Plaintiff's email.

39.     On December 16, 2020, Melissa Evans of Human Resources emailed Plaintiff, stating, "I received your voice mail inquiry about an opportunity to return back to Webster. Could we schedule time on Monday to review and assist you with your questions? Let me know if there is a time that works." Plaintiff had previously spoken to Evans about Plaintiff's cancer diagnosis in or about March or April of 2020.

40.     Seven minutes later, Plaintiff replied, stating "Nice hearing from you and hope all is well with you too. Yes blood work and scans are good which I am very thankful for. Whatever time works for you."

41.     Plaintiff did not hear back from anyone about his emails or his application until January 4, 2021.  At that time, Lea Greco-Wilks emailed Plaintiff, copying Melissa Evans. In her email, Greco-Wilks blamed the delay on the holidays and set a call for January 7, 2021.

42.     Plaintiff continued to review Webster's career site and applied for an additional position in the call center in January 2021. Plaintiff was qualified for this position.  It was Plaintiff's understanding that, at that time, Webster was hiring for more than one position.  On January 4 and January 6, 2021, Plaintiff was interviewed for that position but was not selected.

43.    On September 17, 2021, Plaintiff received a notice from Webster's "daily job alert," with a posting for the same position that Plaintiff interviewed for but was not hired for in January of 2021.

44.    At the time that Plaintiff applied for this position, Plaintiff was 68 years old and a cancer survivor. No explanation was given for not reinstating or rehiring Plaintiff.

45.    On information and belief, Defendant discriminated against Plaintiff by failing to reinstate or re-hire Plaintiff and was motivated, at least in part, due to animus towards Plaintiff as a person with a disability and/or Plaintiff's age.

46.    Based on the facts as stated above, Defendant's conduct violated the Connecticut Fair Employment Practices Act, C.G.S. §46a-60 *et. seq*., the Americans with Disabilities Act, 29 U.S.C. §621 *et. seq*. and the Age Discrimination in Employment Act, 42 U.S.C. §12101 *et. seq*.

**V.    Count One – Age Discrimination under ADEA**

1.    Paragraphs 1 – 46 are hereby incorporated as if fully set forth herein.

47.    By the conduct described above, Defendant discriminated against Plaintiff based upon his age and acted with willful disregard of the law as it pertains to persons over forty years of age.

48.    Defendant's conduct has caused Plaintiff financial harm and substantially harmed Plaintiff's health, resulting in pain, suffering and other emotional distress, and caused Plaintiff to incur attorneys' fees and litigation expenses.

**VI.    Count Two – Age Discrimination under CFEPA**

1.    Paragraphs 1 – 46 are hereby incorporated as if fully set forth herein.

47.     By the conduct described above, Defendant discriminated against Plaintiff based upon his age and acted with willful disregard of the law as it pertains to persons over forty years of age.

48.     Defendant's conduct has caused Plaintiff financial harm and substantially harmed Plaintiff's health, resulting in pain, suffering and other emotional distress, and caused Plaintiff to incur attorneys' fees and litigation expenses.

**VII.     Count Three – Disability Discrimination under ADA**

1.     Paragraphs 1 – 46 are hereby incorporated as if fully set forth herein.

47.     By the conduct described above, Defendant discriminated against Plaintiff based upon his disability and acted with willful disregard of the law as it pertains to disabled persons.

48.     Defendant's conduct has caused Plaintiff financial harm and substantially harmed Plaintiff's health, resulting in pain, suffering and other emotional distress, and caused Plaintiff to incur attorneys' fees and litigation expenses.

**VIII.     Count Four – Disability Discrimination under CFEPA**

1.     Paragraphs 1 – 46 are hereby incorporated as if fully set forth herein.

47.     By the conduct described above, Defendant discriminated against Plaintiff based upon his disability and acted with willful disregard of the law as it pertains to disabled persons.

48.     Defendant's conduct has caused Plaintiff financial harm and substantially harmed Plaintiff's health, resulting in pain, suffering and other emotional distress, and caused Plaintiff to incur attorneys' fees and litigation expenses.

**WHEREFORE**, the Plaintiff demands the following:

1. Jury trial;

2. Lost wages and benefits;

3. Reinstatement or front pay;

4. Pain and suffering / emotional distress;

5. Attorney's fees and litigation expenses;

6. Interest;

7. Punitive damages; and

8. such other relief as the Court deems just and appropriate.


**THE PLAINTIFF,**
**THOMAS MASCITELLI**

**By :/s/ Michael T. Petela, Jr.**
**Michael T. Petela, Jr. (CT28251)**
**Lemberg Law, LLC**
**43 Danbury Rd**
**Wilton, CT 06897**
**T: 203-653-2250**
**F: 203-653-3424**
**mpetela@lemberglaw.com**
**www.lemberglaw.com**